UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jamal Hashi,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Jambo! Deli & Coffee LLC d/b/a Jambo! Kitchen, African Development Center, ADC Commercial Real Estate, Inc., and Nasibu Sareva, individually,<br><br>　　　　Defendants. | Court File No. _____<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jamal Hashi ("Hashi"), for his complaint against Defendants Jambo! Deli & Coffee LLC d/b/a Jambo! Kitchen ("Jambo!"), the African Development Center ("ADC"), ADC Commercial Real Estate, Inc., and Nasibu Sareva (collectively, Defendants), states and alleges as follows:

## PRELIMINARY STATEMENT

1.　This case is about Defendants' willful failure to pay Jamal Hashi minimum wage, overtime, and all wages earned during his employment at Jambo! Kitchen. Hashi worked full time as an Executive Chef at Jambo! for over a year and was paid a total of $4,161.54. He brings this suit to remedy violations of the Fair Labor Standards Act, Minnesota Fair Labor Standards Act, Minnesota Payment of Wages Act, and his common law rights.

1

## PARTIES

**Plaintiff**

2.     Plaintiff Jamal Hashi ("Hashi") is an individual resident of the State of Minnesota.

3.     Hashi worked for Defendants as an Executive Chef at Jambo! Kitchen from approximately January 1, 2017 through approximately May 2018.

4.     Hashi is a covered employee within the meaning of the Fair Labor Standards Act (FLSA), Minnesota Fair Labor Standards Act (MFLSA), and Minnesota Payment of Wages Act (MPWA).

5.     Hashi typically worked between approximately 40 and 80 hours per week for Defendants' benefit.

6.     Hashi was not paid for all hours worked, was not paid minimum wage for all hours worked, and was not paid overtime the hours he worked over 40 in a workweek.

**Defendants**

7.     Defendant Jambo! Deli & Coffee LLC ("Jambo!") is a Minnesota limited liability company headquartered in Minneapolis, Minnesota.  Jambo! Deli & Coffee LLC does business as Jambo! Kitchen in Minneapolis, Minnesota.

8.     The African Development Center ("ADC") is a Minnesota nonprofit corporation who does business in Minneapolis, Minnesota.  According to its website, the ADC "launched Jambo! Kitchen" as a "social venture." The ADC also provides administrative and other services to Jambo!.

9. ADC Commercial Real Estate, Inc. ("ADC CRE") is a Minnesota limited liability company that does business in Minneapolis, Minnesota. ADC CRE is a subordinate affiliate of the ADC and owns and operates the building in which Jambo! Kitchen is located.

10. Nasibu Sareva (Sareva) is an individual resident of the State of Minnesota. Sareva was the Executive Director of the ADC and the Jambo! manager during Hashi's employment. Sareva supervised Hashi and determined whether and how much to pay Hashi.

11. Defendants collectively operated the restaurant Jambo! Kitchen during Hashi's employment.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C. § 216(b).

13. This Court has supplemental jurisdiction over Hashi's state law claims pursuant to 28 U.S.C. § 1367 because Hashi's state and federal claims are so related that they form part of the same case or controversy.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants reside in, and do business within, this District.

## COVERAGE FACTS

15. At all material times, Defendants acted, directly or indirectly, in the interest of an employer or joint employer with respect to Hashi.

16. At all times hereinafter mentioned, Defendants were employers or joint employers within the meaning of the FLSA, 29 U.S.C. § 203(d), Minnesota Fair Labor Standards Act, and Minnesota Payment of Wages Act.

17. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

18. Defendants operate or have operated in interstate commerce by, among other things, using goods and services that originated outside of Minnesota.

## FACTUAL ALLEGATIONS

*Hashi Works with Defendants to Create, Build, and Open Jambo! Kitchen.*

19. In 2016, Hashi was living and working in New York City. He owned and operated a successful catering business there.

20. In September 2016, Hashi began discussions with Nasibu Sareva, Executive Director of the ADC, and Mahad Ibrahim about opening a new fusion restaurant in Minneapolis, with the help of the ADC.

21. Hashi created menus, concepts, and other business plans for the new restaurant and worked with the ADC (through Sareva) and Ibrahim in the Fall of 2016 to bring his plan to fruition.

22. On or around December 6, 2016, Hashi flew to Minneapolis to meet with Sareva and Ibrahim to discuss their partnership and joint venture. Sareva expressed

interest in having the ADC launch the new restaurant and offered to split the profits, with Hashi receiving 25%, Ibrahim receiving 25%, and the ADC receiving 50%.

23. On or around December 8, 2016, Sareva, Ibrahim, and Hashi exchanged proposals for how the partnership would work. Sareva, on behalf of the ADC and Jambo!, again promised that Hashi would receive a share of the profits.

24. On or around December 23, 2016, Sareva emailed Hashi and Ibrahim to confirm that the ADC had agreed to hire both of them as operating managers of the new restaurant. He indicated that they would start work on January 1, 2017.

25. The ADC agreed to pay Hashi and Ibrahim in exchange for their work, including the agreed-upon share of the profits.

26. Hashi informed Sareva and the ADC that he had a tax debt with the State of Minnesota and that he needed to make enough to cover his monthly payments for that debt. Sareva and the ADC assured Hashi he would make more than this amount.

27. In reliance on these representations, Hashi moved from New York City to Minneapolis on January 1, 2017 to start working at Jambo!.

28. Hashi immediately began working to set up and prepare Jambo! for operation.

29. For example, in January, February, and March of 2017, Hashi created all of Jambo!'s menus, prices, and processes, designed the restaurant's kitchen, identified and purchased necessary equipment, and met with vendors to select and purchase various goods, services, and systems needed to operate the restaurant. Hashi also interviewed and hired employees to staff Jamob!

30. Hashi was intimately involved in every aspect of preparing Jambo! for opening. He worked closely with Ibrahim and the ADC (through Sareva).

31. Ultimately, however, the venture was funded by the ADC, and all decisions had to be approved by the ADC.

32. During this time between January and April of 2017, Hashi worked between 20 to 80 hours per week. However, he was not paid for any of this time.

***Hashi Works Long Hours as Jambo!'s Executive Chef—for Little or No Pay.***

33. On April 1, 2017, Jambo! provided Hashi with an offer letter for the Executive Chef position at Jambo!.

34. In this offer, Jambo! agreed to pay Hashi $12.50 for every hour Hashi worked. It also agreed to pay Hashi "in accordance with the Company's standard payroll schedule."

35. Hashi accepted this offer on April 7, 2017, forming an employment contract.

36. On April 5, 2017, Jambo! officially opened for business. The restaurant was located in the ADC CRE-owned building off of Fifth Street in Minneapolis.

37. In preparation for the opening, Hashi worked 11-to-12 hours a day, preparing the restaurant and training the staff. Yet, he still had not been paid anything for this work.

38. Once the restaurant opened, Hashi often worked open to close, and performed additional tasks—such as preparing and closing down the restaurant,

conducting staff training, and coordinating catering events—before and after the official hours of operation.

39. During this time, Hashi worked 10-13 hours a day and approximately 40-80 hours per week. Yet, he still was not compensated for his work.

40. Hashi also provided catering to outside events on Jambo!'s behalf at least once a week during 2017 and into the spring of 2018. He was neither paid for this time nor received the promise share of profits from the catering events.

41. During the month of Ramadan, Hashi did grocery shopping, menu planning, and other preparation work in the morning and then worked 2:00 p.m. until midnight cooking at the restaurant each day. He worked 30 days straight during this time period with no days off. He was paid little or no money during this time.

42. After Ramadan, Hashi continued to do preparation work in the mornings and cook for the restaurant during the normal operation hours of 1:00 p.m. – 10:30 p.m. He continued to work 50 or more hours each week through the end of September 2017.

43. Yet Hashi was paid a total of $1185 for his work from June 26, 2017 through August 10, 2017. This averages to approximately $197.50 per week—or $3.95 per hour for weeks where he worked 50 hours.

44. In or around November 2017, Hashi was pushed out of the Executive Chef function and focused most of his efforts on catering. However, Hashi continued to work for Jambo—for little or no pay.

45. In fact, despite Hashi working 50-80 hours per week for almost all of 2017, Hashi received a total of $4,161.54 from Jambo! for his work in 2017.

46. This caused financial hardship for Hashi and caused him to miss tax payments to the State of Minnesota and incur penalties and additional interest.

47. In November 2017, Jambo! emailed Hashi admitting that it owed him over $4,500 for the work he performed from January 2017 through the end of March 2017. Yet neither Jambo!—nor any of the other Defendants—ever paid Hashi this money (or any other owed wages).

48. Hashi continued to work for Jambo! through May of 2018, when he was forced to quit due to Defendants' failure to pay him for his work.

49. In June 2018, Hashi submitted a written demand to Defendants for over $21,400 in unpaid wages.

50. Defendants refused and still have not paid Hashi all of the wages and compensation owed to him for his work for Defendants.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

51. Hashi realleges and incorporates by reference all the preceding paragraphs of the Complaint.

52. Hashi was an employee of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

53. At all relevant times, Defendants were employers and/or joint employers within the meaning of 29 U.S.C. § 203(d).

54. The FLSA, 29 U.S.C. § 206, requires employers to pay their non-exempt employees minimum wage for all hours worked. Federal minimum wage is—and was at the time—$7.25 per hour.

55. The FLSA, 29 U.S.C. § 207, requires employers to pay their non-exempt employees for hours worked in excess of forty (40) in an individual work week at a rate of no less than one-and-one-half times their regular hourly rate of pay.

56. Hashi was a non-exempt employee of Jambo!—and the other Defendants—and was entitled to minimum wage and overtime wages.

57. Hashi worked over 50-80 hours in most work weeks in 2017, yet was only paid $4,161.54 for this work. There are entire months Hashi was not paid any money for his work in 2017 and 2018. Hashi was therefore not paid the required minimum wage for all hours worked at Jambo!

58. Hashi worked over 40 hours in nearly every work week in 2017 and some work weeks in 2018. Nonetheless, Defendants never paid Hashi any overtime wages.

59. In doing so, Defendants have violated the minimum wage and overtime provisions of the FLSA by failing to pay at least $7.25 per hour of every hour worked and the appropriate overtime premium for all hours worked over 40 in a workweek.

60. This failure to pay Hashi—either the minimum wage or overtime—constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255. Defendants were aware of the hours Hashi was working, admitted they had not paid him for entire months of work, and admitted to owing him money for those months. Yet Defendants still refuse to pay Hashi.

61. As a direct and proximate result of Defendants' willful conduct, Hashi has suffered and will continue to suffer damages in an amount to be determined at trial.

62. Hashi seeks damages in an amount of his unpaid minimum wage for each hour worked and overtime wages for all hours worked in excess of forty (40) hours per workweek, reasonable attorneys' fees and costs for this action, liquidated damages, pre-judgment interest to the extent liquidated damages are not awarded, post-judgment interest, and such other legal and equitable relief as the Court deems proper.

## COUNT II
## VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT

63. Hashi realleges and incorporates by reference all the preceding paragraphs of the Complaint.

64. Hashi was an employee of Defendants within the meaning of Minn. Stat. § 177.23, subd. 7.

65. At all relevant times, Defendants were employers and/or joint employers within the meaning of Minn. Stat. § 177.23, subd. 6.

66. The Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.24, requires employers to pay their non-exempt employees minimum wage for all hours worked.

67. The MFLSA, Minn. Stat. § 177.25 requires employers to pay their non-exempt employees for hours worked in excess of forty-eight (48) in an individual work week at a rate of no less than one-and-a-half times their regular hourly rate of pay.

68. Hashi was a non-exempt employee of Defendants and was entitled to minimum wage and overtime wages.

69. Hashi worked over 50-80 hours in most work weeks in 2017, yet was only paid $4,161.54 for this work. There are entire months Hashi was not paid any money for his work in 2017 and 2018. Hashi was therefore not paid the required minimum wage for all hours worked at Jambo!

70. Hashi worked over 48 hours in nearly every work week in 2017 and some work weeks in 2018. Nonetheless, Defendants never paid Hashi any overtime wages.

71. In doing so, Defendants have violated the minimum wage and overtime provisions of the MFLSA by failing to pay at least the minimum wage for every hour worked and the appropriate overtime premium for all hours worked over 48 in a workweek.

72. This failure to pay Hashi—either the minimum wage or overtime—constitutes a willful violation of the FLSA within the meaning of the MFLSA. Defendants were aware of the hours Hashi was working, admitted they had not paid him for entire months of work, and admitted to owing him money for those months. Yet Defendants still refuse to pay Hashi.

73. As a direct and proximate result of Defendants' willful conduct, Hashi has suffered and will continue to suffer damages in an amount to be determined at trial.

74. Hashi seeks damages in an amount of his unpaid minimum wage for each hour worked and overtime wages for all hours worked in excess of forty (48) hours per workweek, reasonable attorneys' fees and costs for this action, liquidated damages, pre-

judgment interest to the extent liquidated damages are not awarded, post-judgment interest, and such other legal and equitable relief as the Court deems proper.

## COUNT III
## VIOLATIONS OF THE MINNESOTA PAYMENT OF WAGES ACT

75. Hashi realleges and incorporates by reference all the preceding paragraphs of the Complaint.

76. Hashi was an employee of Defendants within the meaning of Minn. Stat. § 181.001 *et seq*.

77. At all relevant time, Defendants were employers and/or joint employers within the meaning of Minn. Stat. § 181.171, subd. 4.

78. Defendants were required by agreement to pay Hashi $12.50 per hour for every hour Hashi worked on or after April 1, 2017. Defendants were also required per the parties' agreement to pay Hashi a specific percentage of Jambo!'s profits and to pay Hashi for hours worked between January 1, 2017 and April 1, 2017.

79. Minn. Stat. § 181.101 requires every employer to pay "all wages earned" by an employee at least once every 31 days on a regular payday designated in advance by the employer and requires the employer to pay a penalty in the amount of the employee's average daily earnings for up to 15 days if the employer does not make the payment within 10 days of demand.

80. Minn. Stat. § 181.14 provides that when an employee quits or resigns employment the wages or commissions earned and unpaid at the time the employee quits or resigns must be paid in full no later than the next regularly scheduled payday and

requires the employer to pay a penalty in the amount of the employee's daily earnings for up to 15 days if the employer does not make the payment within 24 hours after the demand.

81. Defendants refused and failed to pay Hashi for all hours worked and the promised profit-sharing, in breach of Defendants' contractual obligations.

82. Hashi submitted a written demand for outstanding wages and compensation. Defendants still refused and failed to pay Hashi the compensation they owe him. Therefore, Defendants are liable for the penalties in Minn. Stat. §§ 181.101 and 181.14.

83. By failing to properly and timely compensate Hashi for his work, Defendants violated, and continue to violate, Hashi's statutory rights under Minn. Stat. §§ 181.01 and 181.14

84. Defendants' action were willful and not the result of mistake or inadvertence.  *See* Minn. Stat. § 541.07(5).

85. As a direct and proximate result of Defendant's unlawful conduct, Hashi has suffered damages in an amount to be determined at trial.

86. Hashi seeks damages in the amount of his earned and unpaid compensation, including penalties, reasonable attorneys' fees and costs for this action, pre-and post-judgment interest, and such other legal and equitable relief as the Court deems proper.

## COUNT IV
## BREACH OF CONTRACT

87. Hashi realleges and incorporates by reference all the preceding paragraphs of the Complaint.

88. Hashi and Defendants entered into various oral and written contracts governing the payment of Hashi's wages and profit sharing during the course of his employment with Jambo! This includes the April 1, 2017 Offer of Employment that promised to pay Hashi $12.50 per hour for each hour he worked.

89. Pursuant to the terms of these agreements, Defendants were required to pay Hashi specific percentages of Jambo!'s profits, as well as $12.50 per hour for each hour worked after April 1, 2017.

90. Defendants breached these agreements by failing to pay Hashi all of the compensation owed pursuant to the terms of the agreements. Defendants did not pay Hashi the promised profit-sharing and did not pay Hashi the required hourly wage for all hours worked.

91. As a result of Defendant's breach of these agreements, Hashi has been damaged in an amount to be determined at trial.

## COUNT V
## PROMISSORY ESTOPPEL

92. Hashi realleges and incorporates by reference all the preceding paragraphs of the Complaint.

93. Defendants made clear and definite promises to pay Hashi for his work in launching Jambo!, setting it up, and preparing it for its opening. This included the promise to pay Hashi a percentage of the profits from Jambo!, as well as an hourly wage.

94. Defendants made subsequent promises of payment to convince Hashi to continue working at Jambo!—despite not being paid for the work.

95. As a part of these promises, Defendants represented that Hashi would be paid enough money so that he could continue making his required monthly tax payments to the State.

96. Hashi relied upon these promises, to his detriment. First, Hashi quit his job and moved from New York City to work at Jambo!, based on these promises. Additionally, Hashi continued working at Jambo!—and worked 50-80 hours per week—based on the belief that he would be compensated as agreed. Yet Hashi has not received all of the compensation he had been promised.

97. As a result of Defendants' failure to satisfy their promises, Hashi has suffered financial difficulty and incurred additional penalties and/or interest in his tax debt owed to the State.

98. Hashi's reliance was reasonable, and Defendants undoubtedly expected Hashi to rely upon their promises.

99. Hashi would suffer injustice if Defendants are allowed to renege on their promises.

100. As a result of Defendants' conduct, Hashi has been damaged in an amount to be determined at trial.

## COUNT VI
## UNJUST ENRICHMENT

101. Hashi realleges and incorporates by reference all the preceding paragraphs of the Complaint.

102. Hashi conferred numerous benefits on Defendants. These include, but are not limited to, hundreds (or even thousands) of hours of unpaid labor over the course of a year-and-a-half; menu ideas, concepts, and planning; business plans and design concepts; and his connections with and recognition in the Somali community.

103. Despite all of these benefit conferred on Defendants, Defendants have failed to comply with their obligations under the parties' agreements, including properly compensating Hashi for his work.

104. It would be unjust for Defendants to retain the benefits of the agreements and the parties' relationship while avoiding their own obligations.

105. As a result of Defendants' conduct, Defendants have been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief.

1. Judgment against Defendants for an amount equal to Hashi's unpaid wages and/or any other compensation owed to him under the Federal Fair Labor Standards Act, Minnesota Fair Labor Standards Act, and/or the Minnesota Payment of Wages Act;

2. Judgment against Defendants for breach of contract, promissory estoppel, and unjust enrichment in an amount in excess of $50,000;

3. A finding that Defendants' conduct and statutory violations were willful;

4. An amount equal to Hashi's unpaid minimum wage and overtime compensation as liquidated damages pursuant to 29 U.S.C. § 216(b) and the MFLSA;

5. All available civil penalties and interest under Minn. Stat. §§ 181.101, 181.14, and/or 181.145;

6. An award of Hashi's costs, disbursements, attorneys' fees and other legal expenses in bringing this action;

7. An award of Hashi's prejudgment and post-judgment interest; and

8. Such other relief as the Court deems just and equitable.

Dated:  October 3, 2019         *s/ Ashley R. Thronson*
Ashley R. Thronson (#0395947)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Tel:  612-492-7000
Fax:  612-492-7077
Email: athronson@fredlaw.com

**ATTORNEY FOR PLAINTIFF JAMAL HASHI**

67616452 v1